UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID JOSE C.R.,

         Petitioner,

    v.

TONYA ANDREWS,

         Respondent.

No. 1:26-cv-05483-TLN-CKD

A # 246-783-991

**RELEASE ORDER**

This matter is before the Court on Petitioner David Jose C.R.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (ECF No. 8).[2] Respondent filed a consolidated Motion to Dismiss, Answer to Habeas Petition, and Opposition to Motion for TRO. (ECF No. 9.) For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 1.) Petitioner's Motion for TRO is DENIED as moot. (ECF No. 8.) Respondent's Motion to Dismiss is DENIED. (ECF No. 9.)

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    After Petitioner's Motion for TRO was originally placed on the docket (ECF No. 3), a corrected version was entered (ECF No. 8). The corrected version (ECF No. 8) is the operative Motion for TRO. The original version (ECF No. 3) has been stricken.

1

I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum seeker who entered the United States on September 11, 2023. (ECF No. 1 at 5; ECF No. 9 at 29.)  After encountering U.S. Border Patrol, Petitioner was briefly detained, processed as a Notice to Appear, and released on his own recognizance into the United States.  (ECF No. 1 at 5; ECF No. 9 at 26, 33, 39.)  Petitioner maintains that in the time that followed, he attended all court dates and complied with reporting requirements.  (ECF No. 1 at 5.) Petitioner lived with his family in Virginia, was granted a work permit and Social Security number, and obtained employment.  (*Id.* at 6–7, 22, 24.)  Petitioner submits he has no criminal history.  (*Id.* at 6.)

On March 11, 2026, Petitioner was stopped by a law enforcement officer for a traffic violation.  (*Id.* at 5; ECF No. 9 at 15.)  Petitioner received a traffic ticket and was then placed under arrest and transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE").  (ECF No. 1 at 5.)  He was detained at the Chantilly Immigration Detention Center and the Farmville Detention Center in Virginia.  (*Id.*)  He was not provided a bond hearing.  (*Id.*)

On June 26, 2026, while detained at the Farmville Detention Center, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Virginia.  (*Id.* at 6; ECF No. 9 at 8–9.)  That matter remains pending.  (*See* ECF No. 9 at 8–9.) Petitioner was subsequently transferred to the Golden State Annex Detention Facility.  (ECF No. 1 at 4.)

On July 15, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus and Motion for TRO.  (ECF Nos. 1, 8.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (ECF No. 1 at 17–18.)

II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

2

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.     ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 16–17.)  Respondent argues the habeas petition should be dismissed or stayed pending resolution of Petitioner's habeas case before the United States District Court for the Eastern District of Virginia pursuant to the first-to-file rule.  (ECF No. 9 at 2–4.)  Alternatively, Respondent argues Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") but acknowledges "[t]his case is in the category of immigration cases for which the Court has typically ordered immediate release."[3]  (*Id.* at 4–5.)  The Court first considers Respondent's first-to-file argument before turning to the merits of Petitioner's constitutional claim.

A.     First-to-File Rule

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).  The rule "applies when two cases involving 'substantially similar issues and parties' have been filed in different districts." *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (*quoting Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015)).  "However, this 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95.  Courts undertaking the first-to-file analysis should be guided by "the

---

[3]     Though Respondent only cites generally to 8 U.S.C. § 1225(b), based on the surrounding context, the Court understands their position to be that Petitioner is detained under § 1225(b)(2).

3

three pillars supporting the first-to-file rule—economy, consistency, and comity." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 706 (N.D. Cal. 2021).

Respondent argues dismissal is warranted here because the petition in the Eastern District of Virginia was filed first and Petitioner is the same party. (ECF No. 9 at 3.) Respondent also contends, "the court docket/records indicate[] he is challenging his ICE detention," but notes Respondent has not received or provided the Court with a copy of the first petition. (*Id.*)

Upon review of the docket in *Rivera v. Crawford*, No. 2:26-cv-00663-JKW-DEM (E.D. Va.), the Court is satisfied that the interests of comity, consistency, and judicial economy would not be served by declining to accept jurisdiction in this case. The Virginia court has entered no substantive orders with which this Court's ruling would conflict. (*See* ECF No. 9 at 8–12.) Respondent has not provided the Court with adequate information to substantiate their claim of "potential similarity in issues[.]" (*Id.* at 3.) Sufficient briefing has been submitted to this Court to permit it to rule on the habeas petition, and judicial economy would not be favored by staying the present matter, particularly given the substantial liberty interest at stake.

Accordingly, Respondent's Motion to Dismiss is DENIED. (ECF No. 9.)

### B.   Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

4

the question remains what process is due.").

###### i.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on recognizance was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. There is no indication in the record to suggest he violated any of the terms of his release. Petitioner has lived in the United States for nearly three years, during which time he pursued his asylum claim and built a life living with his family, working, and developing ties to his community. The time Petitioner spent released in this country and the meaningful community connections he appears to have made in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court is not persuaded by Respondent's argument that Petitioner has no right to freedom as an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Courts throughout the Ninth Circuit, including this one, have repeatedly rejected this position. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed

interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). Respondent acknowledges the Court has repeatedly rejected their position but puts forth no new arguments or facts justifying a different conclusion in this case. Accordingly, the Court finds Petitioner is not subject to mandatory detention under § 1225(b)(2). Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

### ii.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is

reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. Further, as Petitioner has no criminal history and has demonstrated ties to his community and an interest in continuing to appear at future immigration proceedings while he pursues his asylum case, the risk that he is being detained without proper justification is exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondent. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondent articulates no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention. He received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondent must IMMEDIATELY RELEASE Petitioner David Jose C.R. (A # 246-783-991) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions. Respondent must file a **notice certifying compliance** with this provision of the Court's Order **within two (2) court days** from the date of this Order.

2. Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where the government bears the burden to show by clear and convincing evidence that material changed circumstances demonstrate: (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the government's interest in protecting the public and/or ensuring Petitioner appears at future

immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.  Respondent's Motion to Dismiss is DENIED.  (ECF No. 9.)

4.  Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 8.)

5.  Petitioner's Application to Proceed In Forma Pauperis (ECF No. 2) and Motion to Appoint Counsel (ECF No. 4) are DENIED as moot.

6.  **The Clerk of Court is directed to serve Golden State Annex Detention Facility with a copy of this Order.**

7.  The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 21, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8